### A. W. SULPHINE *v.* JOSEPH O. DUNBAR ET AL.

1. ESTOPPEL.   *In pais.   Silence at sale of land.*
    Where a tract of land is sold under a deed in trust covering the whole, but given
    by a part owner, the owner of another interest in the same, residing upon the
    place, and making no objection to the sale and no claim to the land at the
    time of the sale, is not by such conduct estopped from afterwards asserting his
    title against the purchaser if, at the time of the sale, his title is a matter of
    record, and he does nothing to mislead the purchaser into buying the land,
    although remaining silent as to his title.

2. SAME.   *In pais.   Requesting purchaser to buy land.*
    The owner of the legal title to a part of a tract of land sold under a deed in
    trust, given by another part owner on the whole, is not estopped from assert-
    ing his title against the purchaser by the fact that he was present at the sale,
    and, without making known his claim of title, solicited the purchaser to buy
    the land, where it does not appear that the latter was ignorant of the true
    state of the title, or was misled or deceived by the representations and solicita-
    tions of the former, or that he bought the land on the faith of such representa-
    tions and solicitations.

3. SAME.   *In pais.   Attornment to purchaser.*
    Where an estate in common is sold under a deed in trust on the whole, but given
    by only one of the tenants, and such tenant, after the sale, attorns to the pur-
    chaser for the whole premises, the other tenants, although remaining on the
    land with the permission of the attorning tenant — it not appearing that they
    became his sub-tenants — are not thereby estopped to deny the title of the pur-
    chaser.

APPEAL from the Chancery Court of Jefferson County.
Hon. THOMAS Y. BERRY, Chancellor.

In the year 1865 Joseph Dunbar conveyed to his wife, Celeste Dunbar, and his children, Willis, Joseph O., Kate, and Sallie F. Dunbar, a certain tract of land known as the "Elmwood Place," for a consideration paid by Celeste Dunbar ; and the conveyance was thus made by her request. On November 27, 1867, Celeste Dunbar and her husband executed a deed in trust to secure a debt due John Hart, for supplies furnished for this place, which was being cultivated by Mrs. Dunbar. The debt was never paid, and in April, 1874, the plantation was sold under the deed in trust, and bought by A. W. Sulphine, and conveyed to him by the trustee. On May 26, 1875, Sulphine instituted an action of ejectment against Joseph Dunbar, Celeste Dunbar, Joseph O. Dunbar, Kate Stampley (formerly Kate Dunbar), her husband, Evan Stampley, and Sallie F. Dunbar, for the possession of the land. Celeste Dunbar having died during the pendency of the action, it was revived, as to her, against her legal representative and heirs, who were the same as the other defendants. The defendants pleaded the general issue. But before the trial of the case Sulphine filed his bill in chancery, against all of the defendants, in ejectment, praying that an injunction be issued prohibiting each of them to make any defense to said action.

The bill alleged that in 1857 the land in controversy was sold by Joseph Dunbar to Celeste Dunbar, and paid for by her at the time, and a memorandum of the sale was made in writing ; that she then entered into possession of the land, claiming it as her separate property, and her husband acknowledging it to be such, which claim and acknowledgment continued till October 28, 1868, as appears by their answers in a case wherein J. T. Lampkin was complainant and they defendants, and those answers are referred to as exhibits to the complainant's bill ; that Joseph O. Dunbar was present at the sale under the deed in trust, and urged the complainants to buy the land ; that Kate Stampley and her husband, Evan Stampley, were residing on the place at the time of the sale, and neither of them made any objection to the sale or claimed any

interest in the land sold; that Joseph Dunbar and Joseph O. Dunbar were present when the land was offered for sale by the trustee, and neither of them made any objection to the sale, but they and Celeste Dunbar, Kate and Evan Stampley, were silent as to any right, claim, or title that any of them had to the land; that, on the day of the sale, Joseph Dunbar and Celeste Dunbar agreed with Sulphine that they should remain in possession of the land till January 1, 1875, free of rent, at which time they were to deliver the premises to him, and by the agreement they also acknowledged themselves to be tenants of Sulphine; that Joseph O. Dunbar, Kate Stampley, and her husband remained in possession of a part of "Elmwood Place" during the rest of the year 1874, after the sale in April, by the sufferance and permission of Joseph and Celeste Dunbar, and by complainant's permission, through them. The bill charges that the defendants thereto, by reason of the above facts alleged therein, are estopped in equity from setting up any defense based on their claims existing prior to the sale in April, 1874, against the action of ejectment, whether as privies in blood of Celeste Dunbar or otherwise; and that, as the defendants in that action propose to rely upon such defense, and have no other, their plea to the action is inequitable and against conscience. The defendants demurred to the bill, and, the demurrer being sustained, the complainant appealed.

*H. Cassedy*, for the appellant.

1. The conveyance by the deed in trust and the sale thereunder carried the entire estate, and Celeste Dunbar and her husband are estopped to deny that she had such title as they conveyed. By her answer in chancery, filed in October, 1868, she again sets up her claim of ownership of "Elmwood," and shows that she alone paid the purchase-money, and took possession of the place in 1857. She is estopped now to assert the contrary, and her privies in blood, the defendants in ejectment, are also estopped. Big. on Estop. 59. This estoppel is not obviated by the fact that the other defendants were named in the deed of 1865, with Celeste Dunbar. The

land was sold to her in 1857, and partly paid for; she entered into possession as owner to her purchase, and conveyed her place to secure supplies for it. As against the vendee and innocent purchaser, she is estopped to set up any title, and her heirs, claiming through her, are mere volunteers, and are estopped, in equity, from setting up such claims. Equity will not aid mere volunteers. 2 Story's Eq. Jur., sec. 987.

2. The tenant is estopped from denying the title of his landlord. Joseph and Celeste Dunbar attorned to the appellant, agreeing to deliver possession to him on January 1, 1875, in consideration of release of rent. And Joseph O. Dunbar and Stampley and wife held under Celeste and Joseph Dunbar. This rule of estoppel applies as well to tenants in by permission as to those who pay rent. Before such tenants can set up a claim to the premises they must have surrendered possession. Big. on Estop. 374–378, 383, 384.

3. Joseph O. Dunbar, knowing of the conveyance of the entire tract of land, of the absolute ownership and possession of the same by his mother since 1857, and making no claim to any part of the land, but urging the complainant to buy the land, and inducing him to invest his money, is now estopped to set up title in himself as against Sulphine. Big. on Estop. 498, 501; *Maloney* v. *Moran*, 53 Barb. 29; *Tilton* v. *Nelson*, 27 Barb. 595; *Dickson* v. *Green*, 2 Cushm. 612; *Wendal* v. *Van Ransellear*, 1 Johns. Ch. 344. Actual fraud in Joseph O. Dunbar is not necessary in order to create an estoppel. The injury to the appellant is the same, whether J. O. Dunbar deluded him through ignorance, mistake, or willful misrepresentation. *Tilton* v. *Nelson*, 27 Barb. 599. But the conduct of J. O. Dunbar is charged to be fraudulent, and there is no answer denying it. In *Savage* v. *Foster*, 9 Modern, 35–39, it was held, on a bill brought to relieve against fraud of defendants who would avoid plaintiff's title by an elder settlement, but never gave notice of their title to the purchaser, that the defendants were estopped. The bill here charges that the defendants, J. O. Dunbar, Kate Stampley, and Evan Stamp-

ley, knew of the conveyance by the deed in trust, of their mother's claim to be absolute owner of "Elmwood," of the sale and advertisement, that they were on the place on the day of sale, and that they acquiesced in their mother's adverse claim till January 1, 1875, and made no claim of title in themselves. They have no more right to challenge the complainant's title now than if it had been acquired by their previous license. 2 Story's Eq. Jur., secs. 1545, 1546 ; *Nixon* v. *Corco*, 6 Cushm. 414 ; *Dickson* v. *Green*, 2 Cushm. 612.

*Thomas Reed*, for the appellees.

1. The bill nowhere alleges that the complainant did not know of the title of the appellees, J. O. Dunbar, Kate Stampley, and Sallie F. Dunbar, but admits that he knew their title was on record. He had notice of the defect in the title he obtained from the trustee. Was there any suppression of title by Kate Stampley and Sallie F. Dunbar? None ; they were not present at the sale. Was there any fraudulent act of J. O. Dunbar which led the complainant to purchase the land? None is alleged. Dunbar's silence did not estop him from asserting his title. It has been held by the Supreme Court of this state that a party in whom title is vested must suppress that information fraudulently, before he is estopped to assert his title against the purchaser of the land, even if it should appear that the purchaser had no knowledge of the defective title. *Chew* v. *Calvit*, Walk. 54.

2. It is insisted that some of the defendants to the bill, by reason of being privies in blood and estate to the grantor in the trust deed, are estopped to assert their title against the purchaser under the deed. "A man is said to be estopped when he has done some act which the policy of the law will not permit him to gainsay or deny." "No one shall be estopped from setting up the truth," or, in other words, from showing his rights, etc. It is not pretended that any of the defendants attempted to make a conveyance of the land, except Celeste Dunbar and her husband. Certainly the others are not estopped, by the act of Celeste Dunbar, from asserting

title to their part of the land. If they had joined in the deed, or had claimed title only from their mother, then the doctrine of privies in blood, in estate, and in law would apply, and they would be estopped to make any defense. That doctrine can only apply where they derive title from the ancestor wholly, and not by conveyance.

CAMPBELL, J., delivered the opinion of the court.

The bill presents no equity as against Mrs. Stampley and Miss Dunbar. Their legal title is wholly independent of Celeste Dunbar's. They acquired it by the same conveyance by which title to one-fifth interest was vested in Celeste Dunbar, it is true, but they hold by *purchase*, and not by *descent.*

The one-fifth interest of Celeste Dunbar was vested in the appellant by the deed of trust executed by herself and her husband, and his purchase under that, but the interest of her children was not affected in any way by her conveyance; and the appellant has no right, as against them, unless by virtue of some act of theirs. The interest of Celeste Dunbar in the land had been vested in the appellant before the death of Mrs. Dunbar, and her children cannot claim, and are not shown to attempt to claim, anything by descent, as against the appellant. Neither Mrs. Stampley nor Miss Dunbar is shown to have done anything to estop them from asserting their legal title in defense of the action of ejectment.

There is no charge in the bill against Miss Dunbar, and the only averment as to Mrs. Stampley is that she was on the land, and knew of the sale under the deed of trust, and did not proclaim her rights, and warn purchasers not to buy. *She had a right to be silent.* Her title to an interest in the land was indisputable, and the world had notice of it. She did nothing to mislead or deceive the appellant, or to induce him to purchase the land, and she was under no obligation to forbid the sale, or to warn the appellant not to buy. She was not present at the sale.

Joseph O. Dunbar was present at the sale and urged the

appellant to buy the land, but the bill does not claim that the appellant was ignorant of the true state of the title, or that he was mislead by the representations and solicitations of Joseph O. Dunbar, or that he bought the land on the faith of any representations made by him, or that he was deceived in any respect by him. There is no ground for estoppel by conduct as to Joseph O. Dunbar.

The attornment of Joseph Dunbar and Celeste Dunbar did not affect the right of the children, who were in possession of the land before, in virtue of their ownership of it as tenants in common, to remain in possession; and although the bill avers that they remained in possession with the consent of Joseph and Celeste Dunbar, it does not show that they came in under them as sub-tenants, and they were not estopped to deny the title of the appellant because of the attornment of Joseph Dunbar and Celeste, his wife.

The defendants are not affected by the decree in the case of John T. Lamkin against them. That is *res inter alias acta*. The appellant cannot invoke any aid from that. There is a complete want of mutuality. He is a stranger to that decree.

The bill was demurrable as to all of the defendants, and their demurrer was properly sustained.

Affirmed.